FILED

JAN 12 2026

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY ______ DEP CLK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA

**Case No** 5:26-CT-3014-FL

Plaintiff,
- **Hamza Tebib,**

v.

Defendants.
- **Granville County;**
- **Robert D. Fountain**, Granville County Sheriff (individual and official capacities;
- **Fred Robertson,** Jail Administrator, in his individual and official capacities;
- **Wilson,** Maintenance Officer, in his official capacity;
- **Sheriff Surety Bond**.

# COMPLAINT
(Jury Trial Demanded)

## I. INTRODUCTION

1. This is a civil rights action arising from a **coordinated retaliation and harassment campaign** carried out by jail officials against a **pretrial detainee** who exercised his constitutional and statutory rights through federal litigation.

2. Over a sustained period, Defendants employed **diverse institutional mechanisms** —including deprivation of religiously required hygiene, obstruction of court-ordered discovery, technological interference with communications, tolerance of known inmate threats, and administrative inaction—to punish, intimidate, and silence Plaintiff.

3. These acts were not isolated. They constitute a **continuation of an ongoing pattern of retaliation**, already subject of multiple federal actions in this Court.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

5. Plaintiff brings claims under 42 U.S.C. §§ 1983 and 2000cc-1 (RLUIPA), the First, Eighth, and Fourteenth Amendments to the United States Constitution, and North Carolina law.

6. Supplemental jurisdiction exists under 28 U.S.C. § 1367.

7. Venue is proper in this District because all events occurred in Granville County, North Carolina.

## III. PARTIES

8. Plaintiff **Hamza Tebib** is a pretrial detainee confined at the Granville County Detention Center since November 10, 2022.

9. Defendant **Granville County** operates, funds, and maintains the Granville County Detention Center.

10. Defendant **Robert D. Fountain** is the Sheriff of Granville County and the **final policymaker** for jail operations.

11. Defendant **Fred Robertson** is the Jail Administrator with supervisory authority over detention staff.

12. Defendant **Wilson** is a maintenance officer responsible for jail utilities and infrastructure.

13. Defendant **Sheriff's Surety Bond** is the surety on the Sheriff's official bond pursuant to N.C. Gen. Stat. § 58-76-5.

## IV. JUDICIAL NOTICE

14. Plaintiff requests judicial notice under Federal Rule of Evidence 201 of the existence and procedural posture of:

    a. **Case No. 5:25-ct-3035 (E.D.N.C.)**, involving retaliation and interference with Plaintiff's religious exercise;

    b. **Case No. 5:25-ct-3036 (E.D.N.C.)**, involving pretrial punishment and excessive lockdown; and

    c. **Case No. 5:25-ct-3187 (E.D.N.C.)**, involving induced phone outages and communications interference.

15. These cases involve the same Plaintiff, overlapping Defendants, and materially similar allegations of retaliation, demonstrating that the conduct alleged herein is a **continuation of an ongoing practice**, not an isolated occurrence.

## V. FACTUAL ALLEGATIONS

### A. Protected Activity and Retaliatory Motive

16. Plaintiff has actively litigated federal civil rights actions against Defendants.

17. Defendants were aware of Plaintiff's lawsuits, motions, and discovery activity.

18. On January 7, 2026, this Court ordered Defendants to respond in Case No. 5:25-ct-3035 or risk default.

### B. Interference With Discovery and Access to Courts

19. On November 26, 2025, Defendants' counsel produced discovery materials in Case No. 5:25-ct-3036 on a **Compact Disc** ("**CD**").

20. Upon arrival at the detention center, the CD was confiscated and withheld from Plaintiff.

21. Plaintiff repeatedly requested access so he could review discovery within the court-ordered deadline.

22. Access was granted only **after discovery had expired**.

23. When accessed, the CD contained **printable materials**, demonstrating that the chosen format foreseeably impeded Plaintiff's ability to litigate.

24. As a result, Plaintiff was unable to review discovery, file motions, or use the materials within the discovery period, causing **actual injury** to a non-frivolous legal claim.

**C. Retaliatory Deprivation of Showers and Religious Burden**

25. Plaintiff is a practicing Muslim.

26. Islamic practice requires two forms of ritual purification:

    a. **Minor ablution (wudu)**, which may be performed at a sink; and

    b. **Major ablution (ghusl)**, which **requires a full-body shower** and **cannot be substituted** by sink-based washing.

27. From approximately December 11, 2025, through January 1, 2026, Defendants disabled the hot-water shower line in Plaintiff's pod, producing only **extremely cold water (approximately 35°– 50° F)**.

28. The condition was again recreated on January 6, 2026.

29. Jail officials were repeatedly notified.

30. Hot water remained available elsewhere in the facility, including sinks and other pods.

31. Defendants' actions **categorically prevented Plaintiff from performing major ablution**, imposing a substantial burden on religious exercise.

32. The timing coincided with Plaintiff's litigation activity and pending default proceedings.

**D. Failure to Protect and Permitted Harassment**

33. Plaintiff reported ongoing threats and harassment by a known gang-affiliated detainee.

34. These threats were reported on December 26, 2025, and January 8, 2026.

35. Jail staff acknowledged the threats but stated they lacked authority to act absent express approval.

36. Defendants knowingly permitted the risk to continue, exposing Plaintiff to harm.

**E. Harassment Campaign Summary**

37. Over a continuous period of weeks, Defendants employed **multiple retaliatory mechanisms**, including shower deprivation, discovery obstruction, tolerance of threats, and administrative inaction.

38. These acts collectively constitute a **coordinated harassment campaign** designed to chill protected activity.

**F. Technological Harassment and Induced Phone Outages**

39. Defendants subjected Plaintiff to ongoing **technological interference** affecting telephone communications, tablet functionality, and electronic legal research.

40. These disruptions included dropped calls, one-way audio failures, Wi-Fi disconnections, and bandwidth starvation.

41. Calls routinely terminated prematurely, forcing repeated redials and increasing per-minute charges.

### G. Deliberate Indifference to Communications Costs and Legal Access

42. Defendants were on notice that repeated call drops inflate costs and impair sustained legal communications.

43. Defendants failed to correct or mitigate these conditions.

44. Wi-Fi outages and tablet instability impaired Plaintiff's access to electronic law libraries and case preparation tools.

### H. Integration Into the Retaliatory Harassment Campaign

45. The technological interference occurred contemporaneously with physical deprivation, discovery obstruction, and tolerated threats.

46. Together, these acts demonstrate that Defendants employed **physical, administrative, technological, and social mechanisms** to burden Plaintiff.

## VI. CLAIMS FOR RELIEF

### CUMULATIVE EFFECT OF CONDITIONS AND CONDUCT

*(Applies to All Federal Claims)*

47. Constitutional analysis does not evaluate conditions of confinement or official conduct in isolation. The **cumulative effect of multiple deprivations**, even where individual acts might appear insufficient standing alone, may

establish a constitutional violation.

(*Williams v. Griffin*, 952 F.2d 820, 825 (4th Cir. 1991)).

48. Defendants' conduct, viewed collectively, imposed:

- a **substantial burden on religious exercise**;
- **meaningful obstruction of access to the courts**;
- **punitive conditions** unrelated to any legitimate governmental objective; and
- **severe emotional and psychological distress**.

49. Defendants acted with **knowledge, intent, or deliberate indifference**, satisfying the mental-state requirements applicable to Plaintiff's federal and state claims.

## COUNT I - Interference With Religious Exercise - 42 U.S.C. § 2000cc-1 (RLUIPA) *(Against All Defendants in Their Official Capacities)*

50. Plaintiff is an **institutionalized person** within the meaning of RLUIPA.

51. Plaintiff's Islamic religious practices, including ritual purification and prayer, are **sincerely held religious beliefs**.

(*Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005)).

52. RLUIPA prohibits the government from imposing a **substantial burden** on religious exercise unless it demonstrates that the burden is the **least restrictive means** of furthering a **compelling governmental interest**.

53. A substantial burden exists where official action **forces an adherent to modify behavior or violate religious beliefs**.

(*Holt v. Hobbs*, 574 U.S. 352, 361 (2015)).

54. Defendants imposed a substantial burden by **categorically preventing Plaintiff from performing mandatory major ablution (ghusl)** through prolonged deprivation of functional showers.

55. Major ablution **cannot be substituted** by sink-based washing and is indispensable to lawful Islamic worship.

56. Defendants lacked any compelling governmental interest justifying this deprivation.

57. Even if such an interest existed, Defendants failed to employ the least restrictive means, as hot water was available elsewhere and other pods maintained functioning showers.

58. Defendants' conduct violates RLUIPA.

**COUNT II - First Amendment Retaliation - 42 U.S.C. § 1983**
*(Against All Individual Defendants)*

59. Plaintiff engaged in **protected conduct**, including filing federal civil rights lawsuits, participating in discovery, and seeking judicial relief. (*Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978)).

60. Defendants took **adverse actions** that would deter a person of ordinary firmness from continuing protected activity, including:

- deprivation of showers essential to religious practice;
- interference with discovery access;
- technological disruption of communications; and
- tolerance of known inmate threats.

61. A **causal connection** exists between Plaintiff's protected conduct and Defendants' adverse actions, demonstrated by temporal proximity, Defendants' knowledge of pending litigation, and escalation following court orders.

62. Retaliatory intent may be inferred from circumstantial evidence. (*Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 545 (4th Cir. 2017)).

63. Defendants' actions were not reasonably related to legitimate penological objectives.

**COUNT III - Denial of Access to the Courts - 42 U.S.C. § 1983**
*(Against All Defendants)*

64. Prison officials may not actively interfere with an inmate's access to the courts. (Bounds v. Smith, 430 U.S. 817 (1977)).

65. To state an access-to-courts claim, a plaintiff must plead **actual injury**—that official acts **hindered a non-frivolous legal claim**. (*Lewis v. Casey*, 518 U.S. 343, 351–53 (1996)).

66. Defendants interfered by producing discovery on a CD, confiscating it upon arrival, and withholding access until **after discovery deadlines expired**.

67. Defendants further interfered through technological disruptions that impaired sustained legal communications, law-library access, and tablet-based case preparation.

68. Plaintiff suffered **actual injury**, including:

- inability to review discovery materials;
- loss of opportunity to file discovery motions or seek relief within deadlines; and
- forfeiture of procedural rights in Case No. 5:25-ct-3036.

69. Plaintiff's underlying claims were non-frivolous, as evidenced by survival of Rule 12(b)(6) review and court-ordered discovery.

70. Defendants' interference was deliberate and unjustified.

**COUNT IV- Pretrial Punishment -Fourteenth Amendment – Due Process Clause** *(Against All Defendants)*

71. Plaintiff is a **pretrial detainee** and may not be punished prior to adjudication. (*Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).

72. A condition constitutes punishment when it is imposed with intent to punish or is not reasonably related to a legitimate governmental objective.

73. The challenged conditions—including prolonged shower deprivation, discovery obstruction, technological interference, and exposure to known threats—served **no legitimate non-punitive purpose**.

74. These conditions were excessive in relation to any conceivable objective and therefore punitive.

**COUNT V - Cruel and Unusual Punishment- Eighth Amendment (Pled in the Alternative)**

75. Defendants deprived Plaintiff of basic human needs, including hygiene, safety, and meaningful communication.

76. Defendants acted with **deliberate indifference**, knowing of and disregarding excessive risks to Plaintiff's health and safety. (*Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

77. Plaintiff repeatedly notified Defendants of the conditions and risks, and Defendants failed to act.

**COUNT VI - Equal Protection - Fourteenth Amendment**

78. Plaintiff was **intentionally treated differently** from similarly situated detainees in other pods.

79. Other pods maintained functional showers and did not experience comparable deprivation.

80. No rational basis justified singling out Plaintiff's pod.

81. Selective deprivation violates equal protection. (*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)).

**COUNT VII - Monell / Official-Capacity Liability - 42 U.S.C. § 1983**
*(Against Granville County and Sheriff Fountain in His Official Capacity)*

82. A North Carolina Sheriff is the **final policymaker** for jail operations. (*Knight v. Vernon*, 214 F.3d 544, 552 (4th Cir. 2000)).

83. Official-capacity claims against the Sheriff are equivalent to claims against the governmental entity. (*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

84. Plaintiff's injuries were caused by:

- official policies and customs;
- widespread retaliatory practices;

- failure to correct known systemic problems; and
- decisions and ratification by final policymakers.

85. The recurrence of similar retaliation across multiple cases establishes **custom and deliberate indifference**.

**COUNT VIII - Failure to Train and Supervise - 42 U.S.C. § 1983**

86. Defendants had a duty to train and supervise staff regarding:

- religious accommodation;
- retaliation prohibitions;
- access-to-courts protections; and
- inmate safety and communications reliability.

87. The need for such training was obvious.

88. Failure to train resulted in highly predictable constitutional violations. (City of Canton v. Harris, 489 U.S. 378, 390 (1989)).

89. Defendants' failure constitutes deliberate indifference.

**COUNT IX - North Carolina Constitutional Violations**

90. Defendants violated Plaintiff's rights under Article I of the North Carolina Constitution.

91. No adequate state remedy exists to fully redress these violations. (*Corum v. Univ. of N.C.*, 330 N.C. 761 (1992)).

**COUNT X - Intentional Infliction of Emotional Distress**

92. Defendants engaged in extreme and outrageous conduct, exceeding all bounds of decency.

93. Defendants intended to cause, or recklessly disregarded the likelihood of causing, severe emotional distress.

94. Plaintiff suffered severe emotional and psychological distress.

**COUNT XI - Sheriff's Bond Liability - N.C. Gen. Stat. §§ 162-55; 58-76-5**

95. Defendant Fountain acted under color of office.

96. Defendant **Sheriff's Surety Bond** is **jointly and severally liable** for damages caused by the Sheriff's misconduct.

## VII. PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court grant the following relief:

A. **Declaratory relief** declaring that Defendants' acts and omissions violated Plaintiff's rights under the United States Constitution, RLUIPA, and North Carolina law;

B. **Preliminary and permanent injunctive relief** prohibiting further retaliation, requiring restoration of functional showers, reliable communications access, and adequate protection from inmate threats;

C. **Compensatory damages** against all Defendants for physical, emotional, psychological, spiritual, and economic injuries suffered;

D. **Punitive damages** against the individual Defendants in their individual capacities, to the extent permitted by law, for willful, malicious, and reckless conduct;

E. **Enhanced and treble damages**, as authorized by **N.C. Gen. Stat. § 162-55**, for misconduct committed by the Sheriff and his agents under color of office;

F. **Judgment against the Sheriff's Surety Bond**, jointly and severally, pursuant to **N.C. Gen. Stat. § 58-76-5**, for all damages arising from the Sheriff's official misconduct;

G. **Costs, expenses, and reasonable attorney's fees** pursuant to 42 U.S.C. § 1988 and other applicable law;

H. **Such other and further relief** as the Court deems just and proper.

## VIII. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

**VERIFICATION**
*(28 U.S.C. § 1746)*

I, **Hamza Tebib**, declare under penalty of perjury that the foregoing Complaint is true and correct to the best of my knowledge, information, and belief. Facts alleged upon information and belief are so stated because they are not within my personal knowledge.

**Executed on this 12th day of January 2026.**

Printed Name: Hamza Tebib

Signature: Hamza Tebib

Date: 01/12/2026

**Hamza Tebib, Plaintiff, Pro Se**
Granville Detention Center
525 New Commerce Drive
Oxford, NC 27565